IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BERNARD PICKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-CV-161 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Plaintiff Bernard Pickett brought this action to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability benefits. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review. The Court finds no reversible error and will grant the defendant's motion.

## I.   PROCEDURAL HISTORY

Mr. Pickett's applications were denied initially (Tr. at 65-82, 109-20)[1] and upon reconsideration. (Tr. at 83-104, 129-38.)   Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ").   (Tr. at 139.)   After a hearing, the ALJ determined that Mr. Pickett was not disabled within the meaning of the Act.   (Tr. at

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer.   [See Doc. 6.]

11-26.) The Appeals Council thereafter denied Mr. Pickett's request for review, making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). "[T]he scope of [the court's] review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "[A] reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation marks omitted). The issue before this Court "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

## III. THE ALJ'S DECISION

The ALJ applied the well-established five-step process to evaluate Mr. Pickett's disability claim. *See Hancock*, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4)). At step one, the ALJ found that Mr. Pickett had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ determined that Mr.

2

Pickett suffered from two severe impairments: lumbar strain and cocaine addiction. (Tr. at 16.) The ALJ decided at step three that neither of these impairments met or equaled the criteria of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. at 16-17.) After assessing Mr. Pickett's residual functional capacity, the ALJ determined that Mr. Pickett could perform a full range of medium work, (Tr. at 17-25), and that he could return to his past relevant work. (Tr. at 25-26.) Accordingly, the ALJ determined that Mr. Pickett was not "disabled," as defined by the Act. (Tr. at 26.)

### IV. CONTENTIONS

Mr. Pickett raises three assignments of error. First, he contends that the ALJ erred by not re-contacting Mr. Pickett's treating psychiatrist, Dr. Robert A. Millet, to clarify Dr. Millet's June 23, 2011, written opinion that Mr. Pickett's schizophrenia precludes all gainful employment. Second, Mr. Pickett asserts that the ALJ violated the treating physician rule by not providing legally sufficient reasons for rejecting Dr. Millet's opinion. Finally, he contends that the ALJ erred by failing to obtain a "medical source statement" from Dr. Millet detailing Mr. Pickett's remaining functional abilities.

### V. DISCUSSION

#### A. The ALJ's Duty to Re-contact a Medical Source

Mr. Pickett first sought treatment at Carolina Behavioral Care ("CBC") on March 7, 2011, for hallucinations and symptoms of post-traumatic stress disorder. (Tr. at 569.) Mr. Pickett was treated five times at CBC – on four occasions by Dr. Dinesh Benjamin and

3

on one occasion (April 13, 2011) by Dr. Millet. (Tr. at 564-70.) Dr. Millet provided a written opinion dated June 23, 2011, stating in full as follows:

> Mr. Pickett is a 46-year-old black male with schizophrenia. I have followed him now for about six months. He clearly has symptoms of psychosis even with adequate treatment. I have encouraged him to apply for disability. It is clear to me his symptoms prevent him from gainful employment. I am supportive of his disability claim and happy to work with his attorney if needed.

(Tr. at 632.) Mr. Pickett contends that Dr. Millet's opinion was so inadequate that the ALJ was required as a matter of law to re-contact Dr. Millet for additional information.

Under the regulations in effect at the time of the ALJ's decision, an ALJ was required to re-contact medical sources when the evidence provided by that source was "inadequate" to determine disability. 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) (2011). The relevant regulations provided, in pertinent part, as follows:

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source *when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques*. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

*Id.* (emphasis added).

Here, none of the regulatory grounds for re-contacting a medical source exist. Dr. Millet's report does not contain conflicting or ambiguous information nor does Mr. Pickett

assert that Dr. Millet's opinions were based on medically unacceptable clinical or laboratory diagnostic techniques. This leaves the issue of whether "the report does not contain all the necessary information." Mr. Pickett makes no argument that the treatment notes from CBC are in any way incomplete, illegible or otherwise incomprehensible, and it appears all his treatment records from CBC were in the record. Moreover, each CBC treatment note sets out Mr. Pickett's subjective complaints, his mental status on examination, his diagnoses, and his prescribed treatment. (Tr. at 564-70.) There is nothing to indicate he received mental health treatment from any other source, and his medical records otherwise appeared complete. Under these circumstances, the record was not incomplete. *See Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled."); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) ("[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receives from the claimant's treating physician' that triggers the duty."); *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (finding no duty to contact when "[t]he ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability").

Mr. Pickett relies upon four district court cases from the Second Circuit to support his position that the ALJ had a duty to re-contact Dr. Millet. In each of these cases, the

5

court held that the ALJ had a duty to re-contact a medical source based on the Second Circuit's well-established rule[2] that an ALJ has an affirmative duty to fully and fairly develop the record *sua sponte*, even where a claimant is represented by counsel. *Waters v. Astrue*, No. 10-CV-110, 2011 WL 1884002, at *9 (D. Vt. May 17, 2011) (unpublished); *Dygert v. Astrue*, No. 09-CV-325, 2010 WL 3909571, at *4-5 (N.D.N.Y. Sept. 7, 2010) (unpublished); *Outley v. Astrue*, No. 09-CV-0141, 2010 WL 3703065, at *7 (N.D.N.Y. Aug. 26, 2010) (unpublished); and *Ewald v. Comm'r of Soc. Sec.*, No. CV-05-4583, 2006 WL 3240516, at *2 (E.D.N.Y. Nov. 9, 2006) (unpublished).)

To the extent these cases can be read to say that an ALJ must always re-contact a treating physician before rejecting the physician's opinions related to disability or when a medical opinion is not detailed, the Court does not find them or Mr. Pickett's argument persuasive. Such a rule has not been imposed in other circuits, *see e.g., Skarbek,* 390 F.3d at 504; *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). District courts within the Fourth Circuit have not found a duty to re-contact where the evidence is otherwise adequate to determine the issue of disability. *Woods v. Comm'r of Soc. Sec.*, No. 1:12-cv-00014, 2013 WL 4678381, at *5 (W.D. Va. Aug. 30, 2013) (unpublished); *Parker*

---

[2] *E.g.,.Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). While the Court has not undertaken exhaustive research, it appears the Fourth Circuit has only imposed the "more active role" on ALJs when claimants are not represented. *E.g.*, *Craig v. Chater*, 76 F.3d at 591; *Walker v. Harris*, 642 F.2d 712, 714-715 (4th Cir. 1981); *see Mink v. Apfel*, 215 F.3d 1320, at *2 (4th Cir. 2000)(table). Mr. Pickett was represented by counsel during the proceedings before the ALJ. (Tr. at 27, 30.)

*v. Astrue*, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011); *Love v. Astrue*, No. 3:11CV14, 2011 WL 4899989, at *9 (W.D.N.C. Sept. 6, 2011) (unpublished); *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000). Whether the record is sufficient is a decision to be made on the facts of each particular case. Here, the record is adequate.

As the record does not support any of the regulatory bases on which an ALJ must re-contact a medical source, the Court finds this assignment of error to lack merit.

B. The ALJ's Evaluation of Dr. Millet's Opinion

Mr. Pickett contends that the opinion of a claimant's treating physician may be disregarded only if there is persuasive contradictory evidence, in reliance on *Thomas v. Comm'r of Soc. Sec.*, 24 F. App'x 158, 162 (4th Cir. 2001); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); and *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). Mr. Pickett further contends that there is no such evidence in his case to support the ALJ's decision to reject the opinion of Dr. Millet that Mr. Pickett was disabled by his schizophrenia.

First, the "persuasive contradictory evidence" test relied upon by Mr. Pickett is no longer the governing standard for evaluating the opinions of treating physicians. *See Stroup v. Apfel*, No. 96–1722, 2000 WL 216620, at * 5 (4th Cir. Feb. 24, 2000) (unpublished) (recognizing that the Commissioner's 1991 regulations [codified at that time as 20 C.F.R. §§ 404.1527(d) and 416.927(d)] superseded the "persuasive contradictory evidence" standard from the Fourth Circuit's prior case law); *see also Shrewsbury v.*

*Chater*, No. 94–2235, 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) (same); *Bacnik v. Colvin*, No. 1:12-CV-801, 2014 WL 3547387, at *2 (M.D.N.C. Jul. 17, 2014) (unpublished) (same). *Thomas* is unreported and, in any event, the court's citation to the "persuasive contradictory evidence" test was dicta, as the decision turned on whether an opinion source was or was not a treating physician. *Thomas*, 24 F. App'x at 162.

The relevant governing expression of the treating physician rule is set forth at 20 C.F.R. §§ 404.1527(c) and 416.927(c).[3] Those regulations and case law interpreting them generally require an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment unless the opinions are not well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2)-(4) and 416.927(c)(2)-(4); *Craig*, 76 F.3d at 590 (holding that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."); *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Second, the ALJ discussed in detail Mr. Pickett's medical care, including his mental health treatment at CBC. (Tr. at 18-25.) By way of example, while considering Mr.

---

[3] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651–10657 (Feb. 23, 2012). This Order reflects the nominal regulatory renumbering of the treating physician rule.

8

Pickett's RFC, the ALJ discussed the evidence of Mr. Pickett's mental impairments as follows:

> As for his schizophrenia symptoms, [Mr. Pickett] testified he heard voices his entire life, but the evidence shows [he] regularly visited the emergency room over a course of years and during discussions concerning his mental health, [he] never mentioned hearing voices until 2011. No doctors or health care providers ever noted any [sequelae] of schizophrenia. Despite his allegations of lifelong schizophrenia, [Mr. Pickett] was able to successfully work at skilled jobs, with no evidence that his activities were impacted by voices. During this time of [Mr. Pickett's] alleged disability, the evidence shows [he] worked skilled jobs that required quick thinking and excellent social skills. He volunteered for the Red Cross. [Mr. Pickett] was also able to take care of his two grandchildren aged two and four, after raising his own daughters. [Mr. Pickett] was awarded custody of his daughters. If he had experienced difficulty with symptoms of schizophrenia, the undersigned finds it unlikely that the court would have awarded him custody. Further, he must have been a good father, as he has maintained a relationship with his daughter to include him living with her part-time and her allowing him to babysit her children alone. Moreover, [Mr. Pickett] has maintained good social relationships in the community, to the extent he has been placed in charge of planning a church trip.

(Tr. at 24.) Mr. Pickett makes no argument that any of these observations by the ALJ are inaccurate, nor does he contest the ALJ's conclusions that his mental impairments caused only mild limitations in activities of daily living and social functioning; moderate limitation in concentration, persistence and pace; and no episodes of decompensation of extended duration. (Tr. at 17.) The ALJ further identified undisputed evidence that Mr. Pickett had a history of seeking narcotic pain medicine and not following up on treatment directions, (Tr. at 19-21), that the schizophrenia diagnosis was new; and that he had not been treated for it for an ongoing period of twelve months. (Tr. at 25.)

9

The ALJ concluded that Dr. Millet's opinion was entitled to "little weight" because the ALJ had not found "such limiting factors." (Tr. at 25.) This statement, read in context, refers to prior discussions and findings about Mr. Pickett's mental impairments, (Tr. at 17, 24), and amounts to a conclusion that Dr. Millet's disability opinion is inconsistent with other substantial evidence of record. That is an appropriate ground on which to discount a treating physician's opinion.

Mr. Pickett asserts that the ALJ failed to cite to any evidence in support of her conclusion about Dr. Millet's opinion. Given the five pages of discussion of Mr. Pickett's medical records that led up to the ALJ's conclusion, this contention has no merit. *See Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

C. <u>The ALJ's Duty to Obtain a Medical Source Statement</u>

In his last assignment of error, Mr. Pickett contends that the ALJ erred by failing to obtain a medical source statement ("MSS") from Dr. Millet. Mr. Pickett relies upon SSR 96-5p, which provides that ALJs "are generally required to request that acceptable medical sources provide [an MSS] with their medical reports," 1996 WL 374183, at *4, and 20 C.F.R. §§ 404.1513(b)(6) and 416.913(b)(6), which state that "[m]edical reports should include . . . [a] statement about what [the claimant] can still do despite [his or her] impairment(s) . . . ."

The Court finds these arguments unpersuasive. The quoted language is directed towards insuring that the ALJ has a complete medical history and has obtained all medical evidence from the treating physician, and the regulations themselves state that "the lack of the medical source statement will not make [a medical] report incomplete." *See* §§ 404.1513(b)(6), 416.913(b)(6); *see also Parker,* 792 F. Supp. 2d at 895; *accord Gatling v. Astrue*, No. 2:11-CV-21-FL, 2012 WL 4357013, at *5 (E.D.N.C. Sept. 21, 2012) (unpublished) (finding unpersuasive plaintiff's argument that the ALJ was required to obtain an MSS from the treating physician "because there was already substantial evidence in the record from which the ALJ could make a determination as to whether plaintiff was disabled"); *see also Teague v. Astrue*, 2012 WL 1835668, at *4 ( W.D.N.C. April 26, 2012)(finding ALJ had no duty to obtain opinion evidence from treating sources where plaintiff's attorney did not indicate that there were any outstanding medical records and did not request the ALJ's assistance in obtaining additional records or request that the record be held open for submission of any additional evidence); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Here, there is no evidence that any of Mr. Pickett's mental health treatment records were missing from the record and, at the close of the ALJ's hearing, Mr. Pickett's counsel did not ask the ALJ to hold the record open to obtain additional evidence or an MSS from Dr. Millet. The ALJ did not err by failing to obtain an MSS from Dr. Millet.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is affirmed, that the plaintiff's Motion for Judgment on the Pleadings, [Doc. 10], is **DENIED**, and the defendant's Motion for Judgment on the Pleadings, [Doc. 13], is **GRANTED**. Judgment will be entered concomitantly with this Order.

This 23rd day of September, 2014.

_____
UNITED STATES DISTRICT JUDGE